UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREG KIRKPATRICK, et al.,

                    Plaintiffs,

          v.

IRONWOOD COMMUNICATIONS,
INC.,

                    Defendant.

CASE NO. C05-1428JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Plaintiffs' motion to certify this case as a class action (Dkt. # 24) and Defendant's motion to deny class certification (Dkt. # 38). Defendant has also moved for summary judgment on one of Plaintiffs' claims (Dkt. # 21). The court has considered the parties' briefing and supporting evidence, and has heard from the parties at oral argument.  For the reasons stated below, the court GRANTS Plaintiffs' motion in part, DENIES it in part, and DENIES Defendant's motions.

## II. BACKGROUND

Plaintiffs (and putative class representatives) Greg Kirkpatrick, Robert Miller, and Elijah Clark were once field technicians ("FTs") who worked for Defendant Ironwood Communications, Inc. ("Ironwood").  Ironwood's business is the installation of cable and

ORDER – 1

satellite television equipment in homes across the nation.  Ironwood's Washington FTs primarily install home satellite equipment for DIRECTV, Inc.  Although they perform the bulk of their work in customers' homes, FTs receive their assignments and report their work to one of four Washington offices.  The offices, located in Vancouver, Tumwater (formerly in Olympia), Lynnwood (formerly in Everett), and Spokane, serve defined regions of the state.  Ironwood designated one "area manager" with supervisory responsibility over all Washington offices.  At all relevant times, either Steve Hatter or Gary Patapoff served as Ironwood's Washington area manager.  Each Washington office had a site director who reported to the Washington area manager.  The site directors, in turn, had primary responsibility for supervising Ironwood FTs.

Ironwood pays all of its FTs according to a piece rate or piecework system.  Under Ironwood's piecework system, FTs must record the piecework tasks that they perform each day as well as the hours they work.  Ironwood pays fixed piece rates for the various piecework tasks.  Each week, Ironwood calculates an FT's pay by first adding the amount payable for the piecework the FT performed, then dividing this amount by the total number of hours the FT worked.  The resulting "hourly wage" is relevant in only two circumstances:  first, if the "hourly wage" is less than minimum wage, Ironwood supplements the FT's total piecework pay to ensure that the FT makes at least minimum wage; second, Ironwood pays 1.5 times the "hourly wage" for all hours that an FT works in excess of 40.  Thus, while FTs are not paid an hourly wage in the ordinary sense, the number of hours they work is important in determining their compensation.

Disputes over Ironwood's policies for recording hours worked permeate this lawsuit, and form the first of four categories of claims that the court will discuss throughout this order.  The named Plaintiffs in this action, in addition to at least a dozen other former FTs, have submitted evidence that they often worked more than 40 hours in

ORDER – 2

a week.  The evidence suggests that Ironwood often paid FTs properly under the piece

rate system described above.  E.g., Ex. 22[1] (showing numerous time cards for Mr. Miller),

Ex. 56 (showing corresponding pay statements indicating that Mr. Miller was paid for all

time recorded).  It also indicates, however, that Ironwood engaged in various practices to

prevent FTs from receiving pay for all hours that they worked.  Some FTs allege that site

directors and other supervisors instructed them not to record all hours that they worked.

E.g., Barrio Decl., Bewick Decl., Emerson Decl., Hall Decl.[2]  Others claim that site

directors and others instructed them not to record more than a fixed number of hours,

regardless of how many hours they worked.  E.g., Miller Depo. at 36-38, 46, Clark Depo.

at 216, Hartz Decl., Imbler Decl., Lee Decl., McCarthy Decl., McCoy Decl., Walder

Decl.  Some FTs claim that site directors threatened them with termination or other

sanctions if they recorded all of the hours they worked.  E.g., Emerson Decl., Lee Decl.

Others claim that Ironwood altered time cards to reduce the number of hours that FTs

reported.  E.g., Kirkpatrick Depo. at 106, 112-17, Clark Depo. at 200-202.  Various FTs

claim that Ironwood refused to compensate them for all or part of the time they spent

driving to and from the homes where they performed their work.  E.g., Hartz Decl., Lee

Decl., McCoy Decl., Holmes Decl.  Some FTs who had supervisory responsibilities claim

that Ironwood refused to compensate them for hours they spent "on call" to assist other

---

[1]All bare "Ex." cites refer to exhibits to the declaration of Toby Marshall in support of Plaintiffs' motion for class certification.

[2]Ironwood requests that the court strike many of the declarations from putative class members because they allegedly violate various evidentiary rules.  Rather than comply with this court's Local Rule regarding motions to strike, Ironwood filed a 23-page, single-spaced declaration of counsel enumerating alleged deficiencies in the declarations.  See Ghogomu Decl.; see also Local Rules W.D. Wash. 7(g) (prohibiting litigants from bringing motions to strike that are not contained within a responsive brief), 7(e) (limiting responsive class certification briefs to 24 pages).  The court therefore declines to consider the declaration, and thus denies Ironwood's motion to strike.

ORDER – 3

FTs.  E.g., Clark Depo. at 88, Kirkpatrick Depo. at 188, Hartz Decl., Lee Decl., Walder Dec..  Similarly, some FTs state that once they finished their daily work, Ironwood required them to assist other FTs who had not finished, and did not compensate them. Clark Depo. at 87, Kirkpatrick Depo. at 189.

The second category encompasses claims regarding rest and meal breaks.  Nearly all Ironwood FTs who submitted evidence for Plaintiffs complain that Ironwood required them to record a half-hour meal break whether they took a meal break or not.  Most also allege that Ironwood did not provide required rest breaks.  These allegations support two subcategories of unlawful conduct:  that Ironwood deprived employees of pay by requiring them to record work time as a meal break, and that Ironwood violated Washington law by not providing required rest and meal breaks.

The third category concerns Ironwood's piece rate schedules.  FTs allege that Ironwood often changed piece rates without notice and failed to pay FTs under piece rates in effect at the time they performed their work.  E.g., Miller Depo. at 20, Clark Depo. at 42, Emerson Decl., Hall Decl., Lee Decl., McCarthy Decl., Holmes Decl., Walder Decl..

The fourth category of claims challenges Ironwood's practice of deducting money for uniform cleaning and tool purchase from FTs' paychecks.  E.g., Exs. 35-36, 41, Emerson Decl., Hartz Decl., Imbler Decl., McCoy Decl., Holmes Decl..

Mr. Kirkpatrick, Mr. Miller, and Mr. Clark seek to serve as class representatives to pursue these claims on behalf of themselves and all "hourly paid" Washington employees of Ironwood since April 10, 2002.  In addition, Plaintiffs propose to add Robert Bouchard as a class representative.  These individuals seek to represent not only Ironwood FTs who worked under the piece rate system, but also Ironwood staff who worked inside Ironwood's four Washington offices and were paid a traditional hourly wage.  Plaintiffs bring their claims solely under Washington law.

ORDER – 4

The court will first determine whether this action can proceed as a class action, and will then turn to Ironwood's motion for summary judgment against Plaintiffs' claims under the Washington Consumer Protection Act.

## III. ANALYSIS

### A. Class Certification

The court's decision to certify a class is discretionary. Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1161 (9th Cir. 2001). In considering certification, the court must apply each of the applicable requirements of Fed. R. Civ. P. 23. Id. (citing Clark v. Watchie, 513 F.2d 994, 1000 (9th Cir. 1975)). The court must engage in a "rigorous analysis," but a "rigorous analysis does not always result in a lengthy explanation or in-depth review of the record." Chamberlan v. Ford Motor Co., 402 F.3d 952, 961 (9th Cir. 2005) (citing Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 161 (1982)).

Plaintiffs bear the burden of demonstrating that the class they propose to represent meets the Rule 23 requirements. Doninger v. Pac. N.W. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). Rule 23(a) requires Plaintiffs to demonstrate numerosity, commonality, typicality, and adequacy of representation. Falcon, 457 U.S. at 161. If Plaintiffs satisfy the Rule 23(a) requirements, they must show that the proposed class action meets one of the three requirements of Rule 23(b). Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). In this case, the parties concur that the only potentially applicable requirement of Rule 23(b) is Rule 23(b)(3).

In determining whether the proposed class satisfies Rule 23, the court is neither permitted nor required to conduct a "preliminary inquiry into the merits" of Plaintiffs' claims. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974)); see also Fed. R. Civ. P. 23 advisory committee's

ORDER – 5

note (2003) ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision").  As long as the court has "sufficient material before [it] to determine the nature of the allegations, and rule on compliance with [the] requirements [of Rule 23], and [it] bases [its] ruling on that material, [its] approach cannot be faulted because plaintiffs' proof may fail at trial."  Blackie, 524 F.2d at 901.  The court may assume the truth of Plaintiffs' substantive allegations, id. at 901 n.17, but should consider extrinsic evidence regarding whether the action is appropriate to treat as a class.

With these guidelines in mind, the court turns to the Rule 23 requirements.

**1.      The Proposed Class is Sufficiently Numerous.**

To satisfy the numerosity requirement of Rule 23(a)(1), Plaintiffs must show that the proposed class "is so numerous that joinder of all members is impracticable."  Often, the number of class members by itself is sufficient to establish the impracticability of joining them as plaintiffs.  Jordan v. County of Los Angeles, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds by 459 U.S. 810 (1982).  Where the sheer size of the proposed class does not establish impracticality, the court should consider other factors, including "the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought."  Id.

Here, Ironwood has provided data demonstrating that more than 600 employees have worked at its Washington offices since April 2002.  Ex. 55.  As Plaintiffs admit, not all of these employees are class members, because some worked in managerial capacities and are not eligible for relief, and because others may not have worked at Ironwood long enough to accrue claims in any of the four categories.  Nonetheless, it is undisputed that there are hundreds of employees in the proposed class, and it is undisputed that these employees are dispersed across the state of Washington.

ORDER – 6

The court finds that the proposed class is sufficiently numerous and widely dispersed that joinder of all members would be impracticable.

**2.      The Class Claims Present Common Questions of Fact and Law.**

Rule 23(a)(2) only requires Plaintiffs to show that "there are questions of law or fact common to the class."  Although the Rule speaks of "questions" in the plural, courts have held that a single common issue is sufficient to meet the commonality requirement.  E.g., Haley v. Medtronic, Inc., 169 F.R.D. 643, 648 (C.D. Cal. 1996).  By contrast, Rule 23(b)(3) requires class plaintiffs to show that common questions predominate over individualized questions.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) ("The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).").  The court reserves its discussion of the predominance requirement, as well as a comparison of the common issues in this litigation to those that require individualized treatment, for Section A.4, infra.

The court finds numerous common questions of law.  The class claims require the court to decide the presumably uncontroversial question of whether Ironwood was required to pay its employees a premium wage for overtime hours.  The court must also decide the lawfulness of Ironwood's admittedly statewide policy of taking payroll deductions for uniform cleaning and tool purchase.[3]  Similarly, the court must inquire into whether Ironwood's mandatory meal break policy complied with Washington law, and what legal restrictions govern its ability to modify piece rates it paid to FTs.

---

[3]Ironwood contends that, as the result of an investigation by the Washington Department of Labor and Industries, it made lump sum payments to FTs to compensate for any impropriety in its deductions for uniform cleaning and tool purchase.  It also claims that the FTs' acceptance of those payments perfects its defense of accord and satisfaction.  Rather than defeating Plaintiffs' commonality showing, these concerns merely highlight more common questions.

ORDER – 7

There are also common questions of fact.  Rather than review all of them, the court focuses on questions arising from a series of e-mail communications between Ironwood management.  In these communications, Ironwood's regional director of operations, Jim Duran, and Ironwood's Washington area manager, Steve Hatter, instruct the site directors at each of Ironwood's Washington offices to take action with respect to overtime hours.  In one string of e-mails, Mr. Hatter inquires of Mr. Duran:  "No techs over 40 hours then?"  Ex. 18.  Mr. Duran responds:  "Whenever, and wherever possible."  Id.  Mr. Hatter then forwards the exchange to three of the four Washington site directors, telling them that "[w]ith our work load dropping off we need to be watching and cutting back techs [sic] hours when ever [sic] possible."  Id.  In another e-mail, Mr. Hatter warns all of the Washington site directors:  "When I see techs in this file with 20 hours plus overtime that is completely unacceptable."  Ex. 26.  In another e-mail, Mr. Hatter demands that site directors explain the "insane hours" that some FTs had recorded.  Ex. 32.

For purposes of class certification, the court construes these e-mails solely as evidence that Ironwood's high-ranking officials were concerned about overtime work, and communicated their concerns to its Washington offices in a hierarchical fashion.  Plaintiffs claim that these e-mails are evidence of a common scheme to reduce overtime hours using unlawful methods.  Ironwood claims that they show nothing more than Ironwood's attempt to prevent workers from working excessive hours.  The court cannot resolve this dispute at this stage of the litigation.  The mere existence of the dispute, however, illustrates that there are common issues of fact regarding Ironwood's overtime policy with respect to its Washington workers.

Each of Plaintiffs' remaining allegations raise common factual issues as well.  Their allegation that all Ironwood employees were instructed to record a thirty-minute meal break is common to a large number of class members.  Similarly, resolving the

ORDER – 8

allegations regarding Ironwood's systemic payroll deductions for uniform and tool expenses will require the resolution of common questions regarding the policy. Finally, any changes to Ironwood's piece rate schedules necessarily raise common factual questions, as these schedules applied to all Ironwood FTs.

The court finds that the putative class members' claims present common issues of fact and law, and that Plaintiffs therefore satisfy the commonality requirement of Rule 23(a)(2).

### 3. The Class Representatives Satisfy the Typicality and Adequacy Requirements of Rule 23(a)(3)-(4).

Unlike the numerosity and commonality criteria, the criteria of adequacy of representation and typicality focus on the class representatives. See Hassine v. Jeffes, 846 F.2d 169, 176 (3d Cir. 1988) ("'[C]ommonality' like 'numerosity' evaluates the sufficiency of the class itself, and 'typicality' like 'adequacy of representation' evaluates the sufficiency of the named plaintiff[s]"). Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Rule 23(a)(4) requires Plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." As several courts have noted, considerations underlying the court's inquiry into adequacy and typicality often overlap. E.g., In re MDC Holdings Sec. Litig., 754 F. Supp. 785, 801 (S.D. Cal. 1990) ("Even though the typicality and adequacy of representation requirements are separate, the concerns [they address] overlap a great deal.").

#### a. Adequacy

Turning first to the adequacy of the proposed class representatives, the court must consider whether they have "any conflicts of interest with other class members" and

ORDER – 9

whether the class representatives will "prosecute the action vigorously on behalf of the class."  Hanlon, 150 F.3d at 1020.[4]

The record establishes that each of the three proposed class representatives has already participated vigorously in this litigation.  Ironwood offers neither evidence nor argument suggesting otherwise.

The parties agree that there is at least one conflict of interest between the proposed class representatives and other class members.  Because Mr. Miller, Mr. Kirkpatrick, and Mr. Clark are all former employees of Ironwood, they have neither incentive nor standing to pursue claims for injunctive and declaratory relief on behalf of current Ironwood employees.  Plaintiffs nonetheless seek such relief in their complaint.  Plaintiffs concede that this situation gives rise to a conflict of interest, but they propose to cure it by adding a fourth class representative, Robert Bouchard.  Mr. Bouchard currently works as an FT in Ironwood's Vancouver office.  Ironwood appears to concede that adding Mr. Bouchard as a class representative would provide representation for current employees.  For purposes of considering the class certification question, the court will treat Mr. Bouchard as a class representative.

Ironwood argues that Mr. Bouchard highlights another inadequacy in the proposed class representatives.  Mr. Bouchard, like most (or perhaps all) FTs who work in Ironwood's Vancouver office, performs a portion of his work in Oregon.  Under Bostain

---

[4]The parties often cite older cases which consider the adequacy of class counsel as part of the Rule 23(a)(4) inquiry.  In 2003, Congress added Rule 23(g) to define the court's inquiry into the adequacy of class counsel, thereby decoupling this inquiry from Rule 23(a)(4).  See Fed. R. Civ. P. 23(g) advisory committee's note (2003) ("Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [subdivision (g)] will guide the court in assessing proposed class counsel as part of the certification decision.").  When asked at oral argument, counsel for Ironwood raised no challenge to the adequacy of class counsel.  The court's review of the declarations that Plaintiffs' counsel submitted demonstrates that they satisfy the requirements of Rule 23(g).

ORDER – 10

v. Food Express, Inc., employees cannot recover under Washington law for hours worked in Oregon, even if they are paid as Washington employees.  111 P.3d 906, 910 (Wash. Ct. App. 2005), review granted, 132 P.3d 145 (Wash. 2006).  If Mr. Bouchard serves as a class representative, employees who worked in Oregon will have someone to pursue their interests.  There is no indication on the record, however, that the claims that are currently before the court adequately cover the interests of such employees.  The pending claims invoke only Washington law, and thus Vancouver employees have no redress for hours worked in Oregon.  Such employees might be better served by pursuing additional claims under Oregon law, or by pursuing claims under federal wage and hour laws.  The court will require Plaintiffs to address these issues in future pleadings.

Putting aside the concerns over the interests of current employees and Vancouver employees, the court finds no other conflicts of interest between the proposed class representatives and other class members.  Ironwood points out that since leaving Ironwood, Mr. Miller has complained that an Ironwood FT damaged his television.  In addition, Mr. Kirkpatrick was apparently the target of a sexual harassment allegation from an administrative employee at the Lynnwood office.  While these are no doubt conflicts between class members, they are not inimical to the class representatives' incentive to pursue redress fairly on behalf of the class.  Even were Mr. Miller or Mr. Kirkpatrick inclined to represent the class in a manner detrimental to these two employees, it would be impossible for them to do so while representing their own interests.

The most serious concern over the adequacy of the proposed class representatives are the criminal records of Mr. Miller and Mr. Kirkpatrick.  Such concerns are relevant to the adequacy of a class representative.  See Newberg on Class Actions, § 3.36 n.1-2 (4th ed. 2002) (citing cases considering the adequacy of class representatives with criminal histories).  Mr. Kirkpatrick served three days in jail for a 1995 felony theft conviction.

ORDER – 11

Ex. 12, Kirkpatrick Depo. at 65-67.  He apparently also has misdemeanor convictions.

Mr. Miller's criminal history is more extensive.  He admits to seven felony convictions as

well as an assortment of misdemeanors.  Miller Depo. at 71, 76.  Although several of his

felony convictions occurred in the distant past, he admits to theft and fraud convictions

arising from a 2002 scheme in which he defrauded persons seeking work in the

construction industry.  Id. at 73-75.

        The court finds that Mr. Miller's criminal history makes him an inadequate class

representative, but Mr. Kirkpatrick's criminal history does not.  The court stresses that a

criminal record does not automatically disqualify a putative class representative.  Indeed,

in Mr. Kirkpatrick's case, his criminal history is almost a decade behind him, and there is

no indication that his conviction will have a significant impact on his ability to represent

class members.  Mr. Miller, on the other hand, has a criminal record that is likely to

seriously undermine his credibility.  At least three of his felony convictions are recent,

and at least two arise from a crime involving dishonesty.  Under Fed. R. Evid. 609, Mr.

Miller will likely be subject to multiple attacks on his credibility based on his past crimes.

These attacks will likely severely limit Mr. Miller's ability to vigorously pursue the

interests of absent class members.  For these reasons, Mr. Miller is not an adequate class

representative.

                **b.    Typicality**

        Having discussed the adequacy of the proposed class representatives, the court

now turns to whether Mr. Kirkpatrick, Mr. Clark, and Mr. Bouchard present claims that

are "typical of the claims or defenses of the class" under Rule 23(a)(3).  It is not

necessary that the class representatives' injuries be identical to all class members', "only

that the unnamed class members have injuries similar to those of the named plaintiffs and

ORDER – 12

that the injuries result from the same, injurious course of conduct." Armstrong v. Davis, 275 F.3d 849, 896 (9th Cir. 2001).

Here, no single class representative has claims that are typical of the entire class, but the representatives collectively typify the class. All three representatives allege that they were instructed to record meal breaks whether they took them or not. Ironwood made deductions from all three representatives' paychecks for uniform cleaning, and made deductions from Mr. Clark and Mr. Kirkpatrick for tool purchase. All three representatives worked under Ironwood's piece rate schedules.

As to claims for uncompensated hours of work, the typicality inquiry is more complicated, but the result is the same. Mr. Kirkpatrick alleges that Mike Lee, a site director at Ironwood's Lynnwood office, instructed him not to record more than 50 hours per week. Mr. Kirkpatrick passed the same instructions to his team of FTs. He also claims to have seen Mr. Lee and Mr. Hatter modifying employees' time cards, although he does not know which employees. He alleges that Ironwood did not pay him for some of his drive time, that it did not pay him for time he spent on call for other FTs, and that it did not pay him for assisting other FTs on jobs late in the day. Mr. Clark also claims to have been instructed not to record more than 50 hours of work in a week, and claims to have seen Mr. Hatter and Mr. Lee altering time cards. Like Mr. Kirkpatrick, he claims that he spent time on call for which he was not paid. Other than improperly recorded meal breaks, Mr. Bouchard does not allege that he worked hours for which he was not compensated.

The court's comparison of the declarations Ironwood submitted from potential class members with the claims of the proposed class representative shows that no class member has a claim for which he or she will lack a representative with substantially the same claim. A few potential class members allege improper conduct that no class

ORDER – 13

representative experienced, including disputes over insurance benefits, "custom work,"

and per diem payments for travel.  At oral argument, Plaintiffs' counsel confirmed that

these claims are beyond the scope of this class.

Ironwood correctly notes that none of the proposed class representatives worked in

Ironwood's offices in Olympia and Spokane.[5]  None of the class representatives purports

to have substantial knowledge regarding practices in these other offices.  Moreover,

because each Washington office had a different site director communicating wage and

hour policies to its employees, and a series of different site directors served in each office

during the class period, Ironwood argues that the class representatives' claims are not

typical of claims for any employees in those offices.

Although the court is mindful of the concerns Ironwood raises, the court finds

these concerns insufficient to make the proposed class representatives' claims atypical.

There is no requirement that a class representative have personal knowledge pertaining to

every class member's claim.  Plaintiffs can use evidence from other class members to

demonstrate that other Ironwood offices imposed similar wage and hour policies.

Typicality merely requires that a class representative's claim be "reasonably coextensive

with those of absent class members."  Hanlon, 150 F.3d at 1020 (noting that

representative's claims "need not be substantially identical").  In this case, although the

persons allegedly communicating and enforcing unlawful policies vary from office to

office, the policies they communicated were allegedly similar.  This is to be expected,

because every office appears to have derived its policies from the same source:  the

instructions of Mr. Duran and Mr. Hatter (or his predecessor) to all Washington offices.

While the absence of class representatives from each of Ironwood's Washington offices

_____

[5]Mr. Clark and Mr. Kirkpatrick worked temporarily in the Spokane office, but neither of
them alleges that they learned substantial information about wage and hour policies there.

ORDER – 14

raises concerns, the court finds those concerns insufficient to defeat Plaintiffs' showing of typicality.

In addition, Ironwood claims that the class representatives are atypical because neither of them worked as hourly-paid office staff or as "remote technicians" ("RTs"). The job responsibilities of office staff and FTs are essentially mutually exclusive.  In addition, office staff are paid based solely on the hours they work – they do not receive piecework pay.  RTs perform the same tasks as FTs, and are paid in essentially the same fashion, but they work in remote areas of Washington, and thus do not have regular physical contact with an Ironwood office.  RTs receive less supervision than other FTs.

The court finds that the despite the differences between RTs, FTs, and hourly paid office staff, the class representatives' claims are typical of each of these classes of employees.  Although staff have no claims relating to changes in piece rate schedules or to uniform and tool deductions, their claims for uncompensated time are much the same as the class representatives' claims.  The two staff members who submitted declarations claim that they were prevented from taking meal breaks, but ordered to record them nonetheless.  Dreke Decl., Parkinson Decl.  There is no evidence suggesting that Ironwood did not pay staff for overtime, but to the extent other staff present evidence of unpaid overtime, their claims are likely to be similar in many respects to the representative claims.  As to the RTs, they performed the same work under the same pay system for the same managers as other FTs.  That their work environment is not identical is insufficient to defeat typicality.

As to the four categories of claims in this action, the court finds that the claims of Mr. Kirkpatrick, Mr. Clark, and Mr. Bouchard are typical of all class members.  In making this finding, the court does not dismiss the valid concerns that Ironwood has raised regarding differences in the claims of the class members.  The court also

ORDER – 15

emphasizes, as have other courts, that even if the court certifies a class, certification in no way abrogates Plaintiffs' burden to prove all substantive elements of every class member's claim.  E.g., Cimino v. Raymark Indus., Inc., 151 F.3d 297, 312 (5th Cir. 1998).  Ironwood has ably demonstrated that not every class member has precisely the same claim as the class representatives, and has highlighted the stiff challenges awaiting Plaintiffs.  The court finds, however, that the differences among the claims of the class members are insufficient to overcome Plaintiffs' showing of typicality.  See Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003) (rejecting contention that typicality required that "each job category had a class representative for each type of discrimination claim").  The court will further discuss the impact of Ironwood's concerns in its discussion of the requirements of Rule 23(b)(3).

### 4.    Plaintiffs Must Do More to Satisfy the Requirements of Rule 23(b)(3).

In order to certify a Rule 23(b)(3) class, the court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In making these findings, the court must consider the following non-exclusive list of factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation . . . already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).  The purpose of the "predominance" and "superiority" requirements for a Rule 23(b)(3) class action is to ensure that class treatment will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about

ORDER – 16

1   other undesirable results." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997)

2   (quoting Fed. R. Civ. P. 23 advisory committee's notes (1966)).

3          **a.      Superiority**

4          Turning first to the superiority inquiry, the court has little difficulty concluding

5   that class treatment is the superior means of pursuing redress for the class members.  The

6   evidence before the court suggests that each class member's claim is for relatively little

7   money.  Most class members lack either the incentive or the resources to pursue such

8   claims as individual actions.  Even though Washington law provides for attorneys' fees

9   for prevailing parties in wage and hour suits (e.g., RCW § 49.46.090(1)), the court finds it

10  unrealistic to expect that many class members will be able to obtain counsel to represent

11  them on individual claims.  It is thus not surprising that although the declarations

12  Plaintiffs submitted indicate that numerous class members complain of improper conduct,

13  there is no evidence that any class member has pursued litigation against Ironwood.[6]

14

15         Given the number of class members, Ironwood's protestations that class treatment

16  is not the superior means for resolving this dispute seem disingenuous.  If Ironwood

17  engaged in no systematic misconduct in Washington, the opportunity to obtain a single

18  judgment binding all Washington employees presents an enormous advantage over

19  hundreds of lawsuits.  It is more likely that Ironwood's preference for individual actions

20  is rooted in the expectation that most class members will not pursue individual actions.

21         Given the desirability of resolving these claims in a single action, this court

22  provides a desirable forum for doing so.  Three of Ironwood's four offices are within 200

23

24

25

26

27  _____

28         [6]One former Ironwood employee, Chris Evans, complained to the Washington
    Department of Labor and Industries regarding Ironwood's deductions for uniform cleaning and
    tool purchase.  Exs. 37, 40.

ORDER – 17

miles of Seattle.  Although the need to obtain discovery relating to Spokane-based employees may impose some expense, it is not undue expense under these circumstances.

### b. Predominance

In determining whether common issues predominate over individual issues, no precise formula guides the court.  The court must simply determine whether resolution of common questions would resolve a "significant aspect" of the class member's claim such that there is "clear justification" for class treatment.  Hanlon, 150 F.3d at 1022 (citations omitted).  In this case, the court approaches the predominance inquiry by considering whether, assuming Plaintiffs are able to resolve all common issues in their favor, they can reasonably and efficiently resolve the remaining individualized issues within the constraints of a class action.

As to two of the four categories of claims, individualized issues are minimal.  If Ironwood improperly deducted expenses related to uniforms and tools, Ironwood's own payroll records are sufficient to establish its liability to each class member and each member's damages.  Similarly, if Ironwood has already compensated class members for tool and uniform deductions, Ironwood's records will reveal as much.  If Ironwood improperly changed its piece rates, then class members can resolve individual questions of damage by using Ironwood's records to compare the amount each class member was paid for a task to the amount he or she should have been paid.

As to Plaintiffs' claims for uncompensated hours and improperly recorded meal breaks, individualized questions are more troublesome.  Even if Plaintiffs were to prove that Ironwood enforced a requirement that all employees record a meal break even if they did not take one, it does not follow that all recorded meal breaks were improper.  The evidence suggests that virtually all employees took meal breaks and properly recorded them on at least some of the days that they worked.  Determining each class member's

ORDER – 18

damages, therefore, arguably requires an individualized inquiry into how many meal breaks each class member actually took.

Likewise, the claims for uncompensated hours present complicated individualized questions. Even if Ironwood had a policy of reducing overtime hours by unlawful means, the evidence shows that the means were far from uniform. Accepting Plaintiffs' allegations as true, Ironwood altered some employees' time cards, refused to pay some employees for all or part of their drive time, directed other employees not to record more than a fixed number of hours, required some employees to engage in various types of off-the-clock work, and used threats to prevent employees from recording all of their time. Moreover, it seems beyond dispute that virtually all employees had weeks in which they were properly compensated for all hours that they worked, even where they worked seventy or more hours. Even assuming that Ironwood operated its Washington offices under a corporate directive to reduce recorded hours by improper means, it appears that Ironwood did not employ a consistent policy with respect to any single employee, much less a consistent policy across the class. To prevail on their claims for uncompensated work, therefore, the Plaintiffs will need some means of resolving, *inter alia*, the number of hours each class member worked, the number of hours for which each class member was paid, and the type of wrongful conduct Ironwood used to cause the employee to record fewer hours.

Determining whether common questions predominate over the individual issues noted above turns largely on the approach the class representatives take to resolving the individual issues. In other class actions, plaintiffs have used various methods of determining aggregate damages and determining individual class members' recoveries. See, e.g., Hilao v. Estate of Marcos, 103 F.3d 767, 782-84 (9th Cir. 1996) (describing use of statistical sampling in conjunction with a series of proceedings before a special

ORDER – 19

master).  A discussion of the variety of mechanisms available to fairly and efficiently address individual issues within a class action exceeds the scope of this order.  The court would prefer to discuss how one or more of those mechanisms might promote efficient resolution of the individualized issues in this case, but Plaintiffs have taken virtually no steps down that path.

Plaintiffs have done little more than recite nebulous possibilities for addressing individualized issues; they offer no concrete plan for addressing them.  When pressed at oral argument for a method of determining damages and other individualized issues for class members, Plaintiffs' counsel could offer nothing specific.  When class counsel is unable to articulate a case management plan, the court has ample reason to question whether this class is manageable as a class action.

Nonetheless, the court is convinced that there are methods of managing this action to ensure that common issues predominate over individualized ones.  That Plaintiffs' counsel have failed to articulate a method is a curious shortcoming, but the court is convinced in light of the considerable advantages of class treatment that this shortcoming need not *necessarily* prevent class certification.  The court therefore reserves ruling on the predominance requirement, pending submissions in accordance with the ruling below.

**5.     Ruling of the Court**

For the reasons stated above, the court rules as follows:

(1)     The court grants and denies Plaintiffs' motion for class certification in the following respects:

   (a)     Plaintiffs have satisfied the numerosity, commonality, and typicality requirements of Rule 23(a).

   (b)     Mr. Kirkpatrick, Mr. Clark, and Mr. Bouchard may serve as class representatives.  Mr. Miller may not.

ORDER – 20

(c)     With the exception of those class members who performed work in Oregon, the class representatives listed above satisfy the adequacy of representation requirement of Rule 23(a)(4).

(d)     The court reserves ruling on whether Plaintiffs have satisfied the predominance requirement of Rule 23(b)(3), and whether employees who worked in Oregon are properly included in the class.

(2)     The court denies Ironwood's motion to deny class certification.

(3)     The court will certify this action as a class action, provided that Plaintiffs meet the following conditions:

(a)     Plaintiffs must submit a plan for litigating this action.  The plan must demonstrate to the court that Plaintiffs can manage this action in a manner in which common issues predominate over individualized issues.  The plan must include, at a minimum, (i) a description of the scope of discovery in this action, including the number of depositions Plaintiffs expect to take and an explanation of how the discovery will assist in resolving both common and individualized issues in this action, (ii) a schedule for dispositive motions, including a statement regarding whether Plaintiffs expect to be able to dispose of any common issues on summary judgment, (iii) a plan for determining damages in this action, and (iv) a plan for resolving this case at trial, including a discussion of whether bifurcation is appropriate, and whether individual trials or proceedings will be necessary.  The plan shall also include a schedule for completing stages of this litigation.[7]

---

[7]Although the parties previously stipulated to a schedule for resolving this action within ten months of class certification (Dkt. # 20), the court declined to enter a schedule until it resolved the class certification issue.

ORDER – 21

(b)     Counsel for Plaintiffs shall meet and confer with counsel for Ironwood as soon as practical to discuss the issues to be addressed in the above litigation plan.  The litigation plan need not be a joint submission from the parties, but it must reflect input from Ironwood.  Plaintiffs shall note portions of the plan to which Ironwood has agreed or disagreed.  The parties shall also discuss whether it is appropriate to certify subclasses in this action, and whether naming additional class representatives is appropriate.

(c)     Plaintiffs shall submit the litigation plan within 30 days of this order.  Ironwood shall file no pleading regarding the litigation plan unless the court requests its input.

(d)     Plaintiffs shall submit a proposed plan for providing notice to class members along with their litigation plan.  The plan shall include a draft of notification materials that Plaintiffs propose to send to class members.

(e)     Within 14 days of this order, Plaintiffs shall submit a supplemental brief of no more than 7 pages demonstrating that seeking relief solely under Washington law provides adequate redress to Washington FTs who worked in Oregon, or proposing additional claims that will provide adequate redress.  Within 7 days, Defendants shall respond to Plaintiffs' supplemental brief in a brief of no more than 7 pages.  The court will not consider a reply brief.

**B.     Washington Consumer Protection Act**

The court now turns to Ironwood's motion for summary judgment on Plaintiffs' claim under the Washington Consumer Protection Act ("CPA").  In reviewing the motion, the court must draw all inferences from the evidence in the light most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

ORDER – 22

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial.  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  For purely legal questions, summary judgment is appropriate without deference to either party.

The court must decide whether any of Plaintiffs' allegations against Ironwood are actionable under the CPA.  The text of the CPA, which declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful, provides little assistance in resolving this question.  RCW § 19.86.020.  In Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 533 (Wash. 1986),  the Washington Supreme Court established five elements a private party must prove to prevail on a CPA claim:  "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation."

Based solely on the Hangman Ridge test, Plaintiffs have presented sufficient evidence to sustain a CPA claim.  Plaintiffs have produced evidence from which a jury could conclude that Plaintiffs engaged in an unfair or deceptive acts that occurred in trade or commerce.  Ironwood solicited employees from the general public, and at least impliedly represented that they would be paid in conformity with Washington law.  A jury could conclude that Ironwood did not pay its employees in conformity with

ORDER – 23

Washington law, and that its actions therefore "had the *capacity* to deceive a substantial

portion of the public." Hangman Ridge, 719 P.2d at 535 (emphasis in original).

Although disputes between private parties generally do not impact the public interest, the

"likelihood that additional plaintiffs have been or will be injured in exactly the same

fashion . . . changes a factual pattern from a private dispute to one that affects the public

interest." Id. at 538. Here, because there is evidence that Ironwood subjected all of its

employees to unlawful pay practices, and continues to do so while soliciting employees

from the general labor market, Plaintiffs can prove a public interest impact. Finally, there

is no dispute that Plaintiffs have evidence that they suffered injuries attributable to

Ironwood's conduct.

Ironwood's argument that the CPA does not apply to employment-related disputes

between employers and employees is intriguing, but ultimately insufficient. First, the

court notes that there is generally no bar to using the CPA as a supplemental means of

pursuing violations of other Washington statutes. E.g., Hangman Ridge, 719 P.2d at 535

(listing nine examples of nine statutes for which violations are also "per se" violations of

the CPA). The existence of Washington statutes more specifically tailored to Ironwood's

alleged misconduct is therefore not an automatic bar to a CPA claim.

The court also concludes that RCW § 19.86.070 provides no support for

Ironwood's position. The statute declares that "the labor of a human being is not a

commodity or article of commerce." RCW § 19.86.070. Ironwood neglects to mention,

however, that the statute is in part titled "[c]hapter not to affect mutual, nonprofit

organizations" and is targeted at labor unions and similar organizations:

> Nothing contained in this chapter shall be construed to forbid the existence
> and operation of labor, agricultural, or horticultural organizations, instituted
> for the purposes of mutual help, . . . or to forbid or restrain individual
> members of such organizations from lawfully carrying out the legitimate
> objects thereof.

ORDER – 24

Id.  Only three courts have published opinions citing this statute.  One construed the statute as "exempt[ing] labor associations from the scope of the [CPA]." Ernst Home Ctr., Inc. v. United Food & Commercial Workers Int'l Union, 77 Wn. App. 33, 46, 888 P.2d 1196 (Wash. Ct. App. 1995).  Another construed it as an "agricultural exemption." Golob & Sons, Inc. v. Schaake Packing Co., 609 P.2d 444, 445 (Wash. 1980).  The third court mentioned the statute only in passing.  Short v. Demopolis, 691 P.2d 163, 168 (Wash. 1984).  Absent any indication that Washington courts have construed the statute as bearing on the CPA's application to the employer-employee relationship, the court declines to adopt Ironwood's novel interpretation.

Paradoxically, Ironwood seals its own fate with respect to its summary judgment motion by pointing out that the Washington Law Against Discrimination ("WLAD") exempts employer-employee disputes from coverage under the CPA.  The principal anti-discrimination provision of the WLAD makes all violations of the statute per se actionable under the CPA, except "any unfair practice committed by an employer against an employee or a prospective employee."  RCW § 49.60.030(3).  That the legislature chose to specifically exempt such WLAD claims from the scope of the CPA suggests that where it has declined to do so, courts should not construct such an exemption.  The Hangman Ridge court reached the same conclusion.  See 719 P.2d at 536 ("[T]he Legislature, not this court, is the appropriate body to establish th[e] interaction [between the CPA and other statutes] by declaring a statutory violation to be a per se unfair trade practice.").  None of the statutory systems under which Plaintiffs seek relief contains the required expression of legislative intent.  Indeed, the Washington Minimum Wage Act, under which several of Plaintiffs' claims arise, expressly provides that it does not undermine the provisions of any other statute that might provide relief.  RCW § 49.46.120.

ORDER – 25

1    Ironwood points to only one other Washington authority that marginally supports

2    its position.  In Smith v. K-Mart Corp., the court observed that "no reported Washington

3    cases involv[e] a Consumer Protection Act claim by an employee against [his] employer,"

4    and noted in dicta that "it appears that the [CPA] may not apply to employer-employee

5    disputes."  899 F. Supp. 503, 507 (E.D. Wash. 1995) (declining to remand state law

6    claims to state court).  The court concurs in the observation that it is aware of no instance

7    in which a plaintiff has successfully recovered damages arising out of an employment

8    dispute under the CPA.  Although the paucity of authority might reflect the CPA's

9    inapplicability to such disputes, it might also reflect that given the wide range of statutory

10   remedies that apply specifically to such disputes, no plaintiff-employee has needed to

11   press a claim under the CPA.

12        Ultimately, the court finds no authority supporting Ironwood's efforts to bar

13   Plaintiffs from seeking relief under the CPA.  The court therefore denies Ironwood's

14   motion for summary judgment, but does so without prejudice to moving the court to

15   certify Ironwood's legal question to the Washington Supreme Court pursuant to RCW

16   § 2.60.020.

17                              **IV.  CONCLUSION**

18        For the reasons stated above, the court GRANTS in part and DENIES in part

19   Plaintiffs' motion for class certification (Dkt. # 24); DENIES Ironwood's motion to deny

20   class certification (Dkt. #38), and DENIES Ironwood's motion for summary judgment on

21   Plaintiffs' CPA claim (Dkt. # 21).

22        Dated this 16th day of August, 2006.

23

24

25   _____
     JAMES L. ROBART
26   United States District Judge

27

28

ORDER – 26