UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREG KIRKPATRICK, et al.,

    Plaintiffs,

v.

IRONWOOD COMMUNICATIONS, INC.,

    Defendant.

CASE NO. C05-1428JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on three motions for miscellaneous relief (Dkt. ## 107, 113, 117) and supplemental briefing on two unresolved issues from Plaintiffs' request to certify this suit as a class action. For the reasons stated below, the court certifies a class of plaintiffs, provides an initial definition of the class, and directs that the parties begin the process of notifying class members of this action. The court also GRANTS and DENIES the motions for miscellaneous relief as stated below.

## II. BACKGROUND

Plaintiffs were formerly field technicians ("FTs") at Defendant Ironwood Communications, Inc. ("Ironwood"). They claim that Ironwood engaged in several unlawful pay practices in violation of Washington law, and that most of Ironwood's

ORDER – 1

approximately 600 Washington employees suffered damages as a result of these unlawful practices. Plaintiffs wish to pursue a class action on behalf of those employees.

On August 16, 2006, the court issued an order (Dkt. # 101) on Plaintiffs' motion for class certification. This order assumes familiarity with the prior order, in which the court found that this action met most of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"), but reserved ruling on two issues: whether Plaintiffs had established that common questions predominate in this action under Rule 23(b)(3); and whether the proposed class should include FTs who worked for Ironwood's Vancouver, Washington office but performed at least part of their work in Oregon ("Oregon FTs"). The court directed Plaintiffs to submit a plan demonstrating that they could litigate this action in a manner in which common questions predominate. The court directed both parties to provide additional briefing regarding the Oregon FTs.

In the interim, the parties filed three additional motions. In response to the court's order denying summary judgment against Plaintiffs' claims under the Washington Consumer Protection Act ("CPA"), Ironwood moved to certify three questions to the Washington Supreme Court (Dkt. # 107). Ironwood also moved for leave to oppose Plaintiffs' proposed litigation plan (Dkt. # 117). Finally, Plaintiffs moved for an order limiting Ironwood's communications with potential class members (Dkt. # 113).

### III. DISCUSSION

**A.  This Suit Can Proceed as a Class Action.**

The court recited the standards applicable to Plaintiffs' motion for class certification in its prior order, and will not repeat the discussion here. The court found that Plaintiffs had yet to clear one hurdle: demonstrating that they could litigate this action in a manner in which "questions of law or fact common to the members of the

ORDER – 2

class predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b). The court ordered Plaintiffs to submit a detailed litigation plan.

After reviewing Plaintiffs' proposed litigation plan, the court concludes that Plaintiffs can manage this action such that common issues predominate over individualized issues. Plaintiffs propose a workable means of addressing common questions regarding Ironwood's pay practices at each of its Washington locations. More importantly, Plaintiffs offer concrete proposals for determining damages. They intend to determine aggregate damages through statistical sampling, and to distribute the aggregate damages to class members by requiring class members to submit claims. The court finds that this approach will dispose of individualized issues while allowing the numerous common questions of law and fact to predominate.

Ironwood has unnecessarily[1] sought leave to oppose Plaintiffs' litigation plan. In part, Ironwood argues that despite the litigation plan, Plaintiffs still have not demonstrated that common issues predominate in this action. The court has considered those arguments, but finds them insufficient to prevent class certification. For example, Ironwood contends that Plaintiffs cannot propose a valid means of transforming their "anecdotal" evidence of unlawful pay practices into evidence that Ironwood treated absent class members similarly. Plaintiffs, however, propose offering testimony from a sufficient number of witnesses from each of Ironwood's Washington offices to allow a trier of fact to conclude that such evidence is fairly representative of practices at that office. Should Plaintiffs fail to make that showing at trial or sooner, Ironwood will no doubt make certain that the court is aware of it.

---

[1]The court's prior order instructed Ironwood not to file a "pleading regarding the litigation plan unless the court request[ed] its input." (Dkt. # 101 at 22).

ORDER – 3

The court does not adopt the proposals in Plaintiffs proposed litigation plan, but finds that they are a workable starting point for developing a case management plan. The court directs Ironwood to file a pleading within two weeks of this order proposing modifications or alternatives to Plaintiffs' litigation plan.

**B.     The Court Excludes the Oregon FTs from the Class.**

As the court noted in its prior order, employees cannot recover under Washington law for hours worked in Oregon, even if they are paid as Washington employees. Bostain v. Food Express, Inc., 111 P.3d 906, 910 (Wash. Ct. App. 2005), review granted, 132 P.3d 145 (Wash. 2006). Since then, Ironwood has provided additional evidence demonstrating that FTs who receive assignments from its Vancouver field office perform a substantial portion of their work in Oregon. Some Vancouver FTs perform all of their work in Oregon.

In response to the court's order to demonstrate that this action would provide adequate redress for Oregon FTs, Plaintiffs ask the court to ignore the ruling of the Washington Court of Appeals in Bostain. In the absence of controlling authority from Washington's highest court, the court follows the decisions of Washington's intermediate appellate courts unless there is "convincing evidence" that the highest court would decide the issue differently. In re Kirkland, 915 F.2d 1236, 1238 (9th Cir. 1990) (quoting Stoner v. New York Life Ins. Co., 311 U.S. 464, 467 (1940). The court finds no "convincing evidence" that it should not follow Bostain.

Unable to avoid Bostain, Plaintiffs argue that this action can nonetheless provide relief to Oregon FTs. First, they argue that they can amend their complaint to state claims under the federal Fair Labor Standards Act ("FLSA"). Plaintiffs do not address whether FLSA claims provide the best relief to Oregon FTs. It is possible, for example, that Oregon law provides more extensive remedies than FLSA. More importantly, Plaintiffs

ORDER – 4

cannot bring a Rule 23 class action under FLSA. Instead, they must bring a "collective action" under Section 216 of the Act. 29 U.S.C. § 216(b); see also Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 906 n.9 (9th Cir. 2004). Unlike the "opt-out" classes of Rule 23(b)(3), plaintiffs must opt in to a FLSA class action. Ballaris, 370 F.3d at 906 n.9. Second, Plaintiffs argue that Bostain does not extend to their claims for rest and meal break violations, improper deductions for tool and uniform expenses, failure to pay wages owed, and willful refusal to pay wages.

The court finds that there is no means to manageably address the claims of the Oregon FTs in this action. The focus of this action is Plaintiffs' wage-and-hour claims. Under Bostain, those claims are beyond the reach of Washington law. Even if the court assumes that FLSA provides the best redress for the Oregon FTs, the addition of FLSA claims would infuse this action with legal and factual questions unique to those employees. Moreover, the court finds no procedure that would sufficiently address the practical difficulties inherent in simultaneously managing classes of opt-in and opt-out class members. Finally, even if the court assumes that Washington law provides a remedy for Oregon FTs on some of Plaintiffs claims, that is an insufficient reason to further complicate this action. An unwieldy amalgamation of Oregon FTs and other class members is not a superior means of adjudicating either group's claims.

**C.     The Parties Must Prepare to Notify Class Members.**

Although the court will solicit additional input from the parties before imposing a case schedule and case management plan, the process of notifying class members of this action and their right to opt out of it should begin as soon as practicable. Plaintiffs have submitted a proposed one-page notice to class members, as well as a more elaborate version of the notice that they propose placing on a website dedicated to this action.

ORDER – 5

In large part, the court approves the proposed notice, but Plaintiffs must make several changes.  First, proposed class representative Robert Bouchard is an Oregon FT.  Plaintiffs must remove his name from the class notice.  Second, Plaintiffs must amend the definition of the class to exclude all Ironwood employees who worked solely out of Ironwood's Vancouver office.[2]  Third, rather than state that trial is set for a date certain, the notice shall state that trial is set for "late 2007," and that class members will be notified of a specific trial date when the court sets one.  Fourth, Plaintiffs must include an "opt-out" form along with their proposed class notice.

Once Plaintiffs make these changes, they must provide Ironwood with amended notices.  Within one week after Plaintiffs provide the amended notice, the parties shall meet and confer to discuss the notice.  Among other things, they must endeavor to agree on the form of the notice, a list of names and addresses of potential class members, and the length of time for potential class members to submit opt-out forms.  If the parties are unable to agree on a form of notice, they shall contact the court to request a teleconference.[3]  When the parties have agreed on the form of notice and notice procedures, they shall submit a joint pleading to the court.

---

[2]The court acknowledges that there may be hourly-paid Ironwood employees who worked at the Vancouver office and performed all of their work in Washington.  The court excludes these employees from this action because it finds that addressing their claims along with other Vancouver workers will promote judicial economy.

[3]The court notes the avalanche of paper that both parties have filed in this action to date, and notes that even minor disputes have been the subject of voluminous pleadings.  The court urges the parties to make every effort to resolve such disputes without court intervention.  If they cannot do so, they should request a teleconference with the court before filing motions.

ORDER – 6

**D.   For Now, the Court Declines to Restrict Ironwood's Communications with Class Members.**

Plaintiffs move for an order limiting Ironwood's communications with class members who currently work for Ironwood. Absent such an order, Plaintiffs claim that Ironwood will attempt to discourage employees from participating in this lawsuit, and will retaliate against employees who participate in this action. Plaintiffs seek a broad order prohibiting all communications between Ironwood management and employees regarding this lawsuit, requiring Ironwood to instruct its site managers regarding the order, and requiring Ironwood to inform its employees of the communication ban.

Under some circumstances, a court can limit communications between parties and class members. In Gulf Oil Co. v. Bernard, 452 U.S. 89, 99-100 (1981), the Supreme Court held that Rule 23(d) gives district courts the power to enter such orders. The Court held, however, that a trial court should enter such an order only "on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 101. In Gulf Oil, the court reversed the trial court because it imposed a sweeping limitation on communications between class counsel and potential class members in advance of the court's ruling on class certification. The Ninth Circuit has noted, in dicta, that the need to restrict communications becomes less compelling after class certification. Domingo v. New England Fish Co., 727 F.2d 1429, 1441 (9th Cir. 1984), but see Kleiner v. First Nat'l Bank, 751 F.2d 1193, 1205 (11th Cir. 1985) (noting that "good cause" is generally a sufficient basis for restricting communications between defendants and class members in ongoing litigation).

Plaintiffs cite two specific instances of conduct in support of a communications restriction. First, an Ironwood manager in Vancouver recently used FTs to search

ORDER – 7

through the records of proposed class representative Robert Bouchard to ascertain how much work he performed in Oregon. Ironwood did not allow Mr. Bouchard to assist the other FTs. While Plaintiff's evidence suggests either management naivete or poor judgment, it does not suggest an effort to retaliate against Mr. Bouchard. Moreover, the evidence shows that Ironwood's counsel acted promptly and professionally to ensure that such incidents do not occur again. Second, Plaintiffs claim that Ironwood retaliated against former manager Mike Hartz for assisting them in this action. Ironwood provides evidence that it attempted to demote Mr. Hartz because he provided confidential Ironwood information to his friend, Plaintiff Greg Kirkpatrick, and because he and Kirkpatrick operated a business installing home electronics. Ironwood claims a conflict between Mr. Hartz's position at Ironwood and his outside business interests. Mr. Hartz chose to leave Ironwood instead of accepting the demotion.

The court need not accept either parties' version of events to resolve Plaintiffs' request for relief. Even construing the facts in Plaintiffs' favor, the two incidents they describe do not warrant an order preventing Ironwood from communicating with its employees about this litigation. Because the court has certified this action, class members are now represented parties. Ironwood's counsel may neither communicate with class members outside the presence of Plaintiffs' counsel nor use Ironwood managers to communicate with them. See Wash. Rule of Professional Conduct 4.2. These ethical restrictions do not bind Ironwood management, but the court emphasizes that it will impose severe sanctions and corrective measures if Plaintiffs produce evidence of retaliation against class members or attempts to influence class members as they decide whether to opt out of this action. The court notes that Ironwood's counsel took appropriate corrective action when Ironwood management used potential class members to review documents relevant to this litigation. The court expects that Ironwood's

ORDER – 8

counsel's professional judgment will lead them to advise Ironwood management that the prudent course is not to communicate with class members about this lawsuit.

**E.     The Court Declines to Certify Ironwood's CPA-Related Questions to the Washington Supreme Court.**

Finally, the court turns to Ironwood's request to certify questions regarding Plaintiffs' CPA claims to the Washington Supreme Court.  Under RCW § 2.60.020, a federal court may certify a question of state law when certification is "necessary to ascertain the local law of this state in order to dispose of" a proceeding before the court.  The court denies Ironwood's certification request for several reasons.

First, in accordance with Washington law, the court is loathe to burden the Washington Supreme Court with a certified question unless the answer to the question is "necessary" to the disposition of a proceeding.  In this case, Plaintiffs' CPA claims merely supplement their wage-and-hour claims.  The CPA claims will require essentially the same evidence as the wage-and-hour claims, and thus Plaintiffs' pursuit of the claims is unlikely to have a substantial impact on discovery or trial.  The court envisions no situation in which Plaintiffs can prevail on their CPA claims without prevailing on their wage-and-hour claims.  It is therefore not clear that Plaintiffs will obtain any additional relief through the CPA.   The court thus finds that certification is not necessary to the disposition of this action.

Second, it is apparent from the parties' briefing that neither Ironwood nor Plaintiffs have yet determined the precise contours of the CPA claim or claims in this action.  The court expects that discovery will better define Plaintiffs' claims.  Certification is at best premature when the parties have yet to place their dispute in sharp relief.

ORDER – 9

Third, Plaintiffs correctly note that Ironwood chose to remove this action to federal court. If the court were to certify its questions of state law, Ironwood would have its proverbial cake and eat it too. Under these circumstances, the court will hold Ironwood to its choice of forum.

## IV.  CONCLUSION

For the reasons stated above and in its prior order, the court certifies a class comprised of hourly-paid employees from all of Ironwood's Washington offices except the Vancouver office. The court GRANTS Ironwood's motion (Dkt. # 117) for leave to submit a response to Plaintiffs' proposed litigation plan. Ironwood may submit a brief addressing its concerns with Plaintiffs' plan (other than concerns relating to class notice) within 21 days of this order. The court DENIES Ironwood's motion to certify questions to the Washington Supreme Court (Dkt. # 107) and DENIES Plaintiffs' motion to limit Ironwood's communications with class members (Dkt. # 113).

Dated this 1st day of November, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 10